IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

IRENE INFERRERA, et al.,

       Plaintiffs,

     v.

WAL-MART STORES, INC., et al.,

      Defendants.

Civil No. 11-5675 (RMB/JS)

---

**MEMORANDUM OPINION AND ORDER**

This personal injury case arises from plaintiff's "slip" on December 8, 2008, at defendant's store in Millville, New Jersey. The issue before the Court is whether defendant may withhold the production of its videotape of plaintiff's fall until after plaintiff is deposed.   The Court received the parties' letter briefs and exercises its discretion not to hold oral argument.  L. R. Civ. P. 37.1(b)(3).   For the reasons to be discussed, defendant's application for a protective order is DENIED.[1]

Plaintiff alleges that on December 8, 2008, she "encountered a wet, waxy, slippery and/or other hazardous condition on [defendant's] floor which disrupted her balance and/or caused her to slip resulting in injury to her person."  Complaint ¶5. Defendant acknowledges it has a videotape of the alleged incident. Defendant does not allege that the video involves anything but the

---

[1] The issue before the Court was raised at the Fed. R. Civ. P. 16 Scheduling Conference.  Rather than filing a motion, the Court requested letter briefs.

routine taping it does in the normal course of its business. Defendant does not contend, for example, that plaintiff acted suspiciously so its cameras specifically focused on her. Defendant believes its tape impeaches plaintiff's version of her accident and does not want to produce the tape until after she is deposed. Defendant undoubtedly hopes to show inconsistencies between plaintiff's deposition testimony and its tape. There is no dispute that the tape is relevant to the claims and defenses in the case and that absent a Court Order it should be produced in connection with defendant's Fed. R. Civ. P. 26(a) disclosure.

Defendant is essentially asking for a protective order that it can delay the production of its tape. Fed. R. Civ. P. 26(c)(1)(B) states that for good cause shown the court may specify the terms, including time and place, for a disclosure or discovery. Although the Court recognizes the tactical reasons for defendant's request, it finds that defendant has not established good cause to support its application. In this instance, the hope or expectation that relevant evidence may impeach a witness does not establish good cause to delay the production of the evidence in discovery. Impeachment evidence is available in virtually every case. If a party could delay the production of relevant evidence to use for impeachment purposes at a deposition, than large swatches of discovery could be withheld. In addition, the same issue present here would come up in almost every case. If defendant's reasoning

is adopted, the same argument could be made with regard to incriminating documents, e-mails, photographs, audiotapes, etc. Defendant's position would create an avenue to delay producing relevant discovery that does not exist. Furthermore, although in this instance defendant is seeking to delay the production of relevant evidence, later in the case the tables could be turned. If the Court grants plaintiff's application it is not far-fetched to expect that at a later date in this or another case plaintiff will want to hold back relevant evidence to use to impeach defendant at its deposition.[2] Taken to an extreme, the delayed production of relevant evidence could become the rule rather than the exception. The Court does not believe this is consistent with either the letter or spirit of the Federal Rules of Civil Procedure.

The purpose of the court system is to resolve civil disputes in a civil way. Blumenthal v. Drudge, 186 F.R.D. 236, 239 (D.D.C. 1999). Thus, "gotcha games" are not acceptable. See Worden v. Interbake Foods, LLC, No. 10-4118, 2011 WL 4954628, at *1 (D.S.D. October 18, 2011); Georgacarkos v. Wiley, No. 07-cv-01712-MSK-MEH, 2011 WL 940803, at *5 (D. Colo. March 16, 2011. See also Carr v.

---

[2]For example, in a future "fall down" case against defendant, a plaintiff who took a photograph of an accident scene could ask to withhold production of the photograph so he or she could impeach defendant's witnesses who may deny that a dangerous condition existed. If this situation occurred, the Court does not expect that defendant would agree that it is fair or reasonable to withhold relevant evidence until after it is deposed.

Spherion, No. 08-0326, 2009 WL 3064721, at  at *7 (W.D.La. August 17, 2009)("[T]he law has ... evolved beyond a transparent game of 'gotcha'"); Compaq Computer Corp. v. Ergonome, Inc., No. H-97-1026, 2000 WL 345903, at *3 (S.D. Tex. 2000)("The law and this Court abhor a 'gotcha'"). The Court will not authorize "gotcha games." Defendant's tape will be produced and then plaintiff will be deposed.  This is how the orderly progression of civil cases has and will proceed.

A fundamental error in defendant's argument is that it is seeking to delay the production of a "surveillance" tape.  That is not the case.  As used in this context surveillance connotes the close observation of a person under suspicion.   In this case, defendant is seeking to delay the production of a  tape prepared in the regular course of its business.  Defendant's references to its surveillance tape are, therefore, erroneous, misleading, and ill-conceived.  This is especially true since defendant is aware that the cases it relies upon address classic surveillance tapes and not contemporaneous business tapes of a plaintiff's accident in a retail store.

Defendant's argument that the Court should apply a "substantial need" balancing test is also ill-conceived. Defendant is referring to Fed. R. Civ. P. 26(b)(3) which provides that attorney-work product is not discoverable unless a party shows it has a substantial need for the materials.  A surveillance tape of

a plaintiff prepared for impeachment purposes is fundamentally different than a store's tape of its customers. No work-product issues are implicated when a store tape is prepared.  To the extent defendant argues its in-store video of plaintiff is work-product, the argument is frivolous.[3]  The video of plaintiff was plainly prepared in the regular course of defendant's business.

Plaintiff primarily relies upon the Honorable Joel M. Slomsky's March 7, 2011 Order in Delacruz v. Walmart Store 5103, Walmart Associates, Inc., C.A. No. 10-5932 (E.D. Pa. March 7, 2001), and his March 21, 2011 Order denying plaintiff's motion for reconsideration.  It appears from the Orders that Judge Slomsky delayed the production of defendant's videotape until after plaintiff's deposition.  However, the only support the court relied upon was Machi v. Metropolitan Life Ins., Co., No. 02:07cv1754, 2008 WL 24120947, at *1-2 (W.D. Pa. June 10, 2008).  That case is distinguishable because it addressed surveillance tapes, not a tape of the underlying incident in question that was prepared in the regular course of business.  (The Machi decision relied upon Snead

---

[3]Defendant argues it "may withhold [its video] because it is protected as work product by Fed. R. Civ. P. 26(b)(a)(3) as it is a tangible thing prepared in anticipation of litigation and because Plaintiff does not have a 'substantial need' for this video to be produced prior to her deposition."  See November 15, 2011 Letter Brief at 1-2 (emphasis in original).  Defendant is or should be aware that it has the burden to show that the work product doctrine applies and that documents and tapes prepared in the regular course of business are not protected.  United States v. Rockwell Int'l., 897 F.2d 1255, 1265-66 (3d Cir. 1990); Torres v. Kuzniasz, 936 F. Supp. 1201, 1208 (D.N.J. 1996).

v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148 (E.D.Pa. 1973), which also addressed the production of surveillance tapes). None of the cases defendant relies upon are similar to this case. See Jenkins v. Rainner, 69 N.J. 50 (1976)(motion pictures taken of plaintiff by defendant's insurer in preparation for trial); Daniels v. National R.R. Passenger Corp., 110 F.R.D. 160 (S.D.N.Y. 1986)(surveillance films); Tripp v. Severe, No. L-99-1478, 2000 WL 708807 (D. Md. 2000)(surveillance videotapes); Martino v. Baker, 179 F.R.D. 588 (D. Colo. 1998)(surveillance tapes); Ward v. CSX Transp., Inc., 161 F.R.D. 38 (E.D.N.C. 1995)(surveillance materials).

For the reasons discussed herein, the Court respectfully declines to follow Judge Slomsky's ruling in Delacruz. The Court disagrees that defendant can delay the production of its clearly relevant videotape so it can use the tape for impeachment purposes at plaintiff's deposition.

In United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958), the Court stated that "[m]odern instruments of discovery serve a useful purpose.... They together with pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. Only strong public policies weigh against disclosure." In Hayes v. Cha, 338 F. Supp. 2d 470, 505 (D.N.J. 2004), the Court indicated that "reducing gamesmanship is a core aim" of the disclosure requirements in Fed. R. Civ. P. 26. These

goals and aims are furthered by the prompt production of relevant evidence.   Sufficient safeguards such as cross-examination are available to assure that defendant's concern about potentially tainted deposition testimony is overblown.[4]

Accordingly, for all the foregoing reasons,

IT IS HEREBY ORDERED this 20th day of December, 2011, that defendant's application for a protective order is DENIED. Defendant shall produce its videotape of plaintiff's incident within seven (7) days of the date of this Order.   Thereafter, plaintiff's deposition may be taken.


s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

---

[4]To be sure, there may be instances where good cause is established to delay the production of relevant evidence.  However, that is not the case here.